UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY VAN MOURIK, <br><br>  Plaintiff, <br><br> v. <br><br> BIG HEART PET BRANDS, INC., <br><br>  Defendant. | Case No. 3:17-cv-03889-JD <br><br> **ORDER RE MOTION TO DISMISS** <br> Re: Dkt. No. 23 |

In this putative class action, plaintiff Nancy van Mourik brings the dispute over the use of the word "natural" to pet food. She challenges representations by defendant Big Heart Pet Brands, Inc. ("Big Heart") that its pet food products are "All Natural With Added Vitamins, Minerals, & Nutrients." Dkt. No. 1-1. Van Mourik alleges that these statements are false and deceptive because the foods contain synthetic or artificial ingredients. Dkt. No. 1 at 5-6; Dkt. No. 43 at 8. She sues on behalf of putative classes of California and nationwide consumers under the California Consumer Legal Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), breach of express and implied warranties, common law fraud, intentional misrepresentation, and unjust enrichment. Dkt. No. 1 at 15.

Big Heart moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b). Its main contentions are that van Mourik may not sue under California consumer protection law, and that the allegations of false and deceptive advertising are implausible under Rule 8(a) and lack the particularity required by Rule 9(b). Dkt. No. 23.

## DISCUSSION

Straightforward standards govern the application of Rule 12(b)(6). To meet the pleading requirements of Rule 8(a) and to survive a Rule 12(b)(6) motion to dismiss, a claim must provide "a short and plain statement . . . showing that the pleader is entitled to relief," Fed. R. Civ. P.

8(a)(2), including "enough facts to state a claim . . . that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if, accepting all factual allegations as true and construing them in the light most favorable to the plaintiff, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Rule 9(b)'s specificity standards apply because Van Mourik alleges false and misleading product representations that sound in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

## I.     The Putative California Class Claims

Van Mourik divides her claims into a set for a putative California class under California law, and a set for a putative nationwide class. Big Heart challenges the plausibility of the California claims but the first question is whether van Mourik is properly situated to invoke California law on behalf of California residents.

She is not. Van Mourik is a resident of Texas who saw the challenged advertisements in Texas and bought the defendant's dog food there. She has no personal connection whatsoever to California, and is not herself a member of the putative California class. While this at first blush might seem to be only a question of her adequacy as a class representative under Rule 23(a), it raises more fundamental concerns of standing. *See Gratz v. Bollinger*, 539 U.S. 244, 263 (noting cases where significant differences between the named plaintiff and unnamed class have been analyzed under the rubric of standing); *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("As this Court has repeatedly held, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members") (listing cases) (internal quotations omitted). District courts in our circuit have dismissed state law class claims for lack of standing before the class certification stage where no named plaintiff resides in or otherwise interacted with the state. *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015) ("the named Plaintiffs do not have standing to assert claims from states in which they do not reside or did not purchase their mobile device"); *Mollicone v. Universal Handicraft,*

*Inc.*, No. 216CV07322CASMRWX, 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017) (finding that "the majority of courts . . . have concluded that when a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal" and listing cases) (internal citation omitted). That is the right outcome here, too.

All claims on behalf of the California classes are dismissed without prejudice. Van Mourik may seek to cure these standing defects by adding a named plaintiff who is a California resident.

## II. The Putative Nationwide Class Claims

Van Mourik sues on behalf of a putative nationwide class under common law fraud, intentional misrepresentation, and quasi-contract/unjust enrichment. Dkt. No. 1 at 24-26. It is well-established that these common law actions vary materially among the states. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012). But van Mourik does not specify which state's laws she means to sue under, nor does she clearly address the elements of any of these claims. These claims are all inadequately pleaded and fail to advise the defendant of what it is called to answer for legally. They are dismissed with leave to amend.

## III. Choice Of Law For van Mourik's Individual UCL, CLRA and FAL Claims

The next issue is whether van Mourik may sue as an individual under California's main consumer protection statutes. This triggers the need for a determination of whether the laws of California or van Mourik's home state of Texas should govern her claims.

The threshold inquiry is whether California law encompasses van Mourik's Texas purchase. The "presumption against extraterritoriality applies to the UCL in full force" because neither "the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (Cal. 2011). That presumption also applies to the CLRA. *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130 (N.D. Cal. 2014) (listing cases). However, California law might still apply to the claims of foreign residents if "the unlawful conduct that formed the basis of the out-of-state plaintiffs' claims (i.e., fraudulent misrepresentations made to induce consumer transactions) . . . occurred in California." *Sullivan*, 51 Cal. 4th at 1208 n.10. Here, van Mourik

alleges that "the marketing and advertising of the Products emanates from the pet food business headquarters in San Francisco, California." Dkt. No. 1 at 4. At the pleading stage, these allegations are enough to connect Big Heart's allegedly unlawful conduct (creating false or misleading advertising) with the state of California. Consequently, van Mourik's invocation of California law is permissible as a first step.

But that is not the end of the inquiry. This case is before the Court under CAFA, a species of diversity jurisdiction, and so California law governs the choice of law determination. *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167-68 (N.D. Cal. 2016). Absent an effective choice of law agreement, California applies a three-step test to decide what law applies. *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (Cal. 2001). This test requires the proponent of the foreign law to (1) identify material differences between foreign law and California law, and (2) establish that the foreign state is interested in having its own law apply. For step (3), the Court applies "the law of the state whose interests would be 'more impaired' if its law were not applied." *Id.* at 919-20.

Differences are material when they "spell the difference between the success and failure of a claim" or determine availability of remedies. *Mazza*, 666 F.3d at 591. Big Heart has identified a number of differences between Texas and California consumer protection law that are material to van Mourik's consumer protection claims. For example, van Mourik alleges that Big Heart's conduct was unlawful under the "unfair" prong of the UCL, but the Texas Deceptive Trade Practice-Consumer Protection Act ("DTP-CPA") targets "false, misleading or deceptive acts or practices" and does not on its face target "unfair" acts. Tex. Bus. & Com. Code Ann. § 17.46. Van Mourik concedes this point by failing to address it in her opposition. In addition, the CLRA permits van Mourik to "recover actual damages (at least $1000), an injunction, restitution, punitive damages and 'any other relief that the court deems proper.'" *Mazza*, 666 F.3d at 591 (citing Cal. Civ. Code § 1780(a)(1)-(5)); Dkt. No. 1 at 18 (CLRA claim). In contrast, the DTP-CPA contemplates economic damages with no minimum and treble damages for knowing or intentional violations. Tex. Bus. & Com. Code Ann. § 17.50.

4

In addition, Texas has a clear interest in applying its own consumer protection laws in this case. "Each of our states has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them." *Mazza*, 666 F.3d at 592-93 (citing *McCann v. Foster Wheeler, LLC*, 48 Cal. 4th 68, 97-98 (Cal. 2010)). California specifically "recognizes that with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest. California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593 (citations and quotations omitted). As in *Mazza*, "the last events necessary for liability as to the foreign class members -- communication of the advertisements to the claimants and their reliance thereon . . . -- took place in the various foreign states, not in California." *Id.* at 594. Texas has a strong interest in regulating false or deceptive advertising seen by its residents, while California's interest in applying its laws on behalf of non-residents is "attenuated." *Id.*

Consequently, under California's choice of law principles, and in the facts and circumstances of this case, Texas law governs van Mourik's claims. Failure to apply it would impair Texas's greater interest in overseeing the consumer protection of its residents.

This may seem an odd result in that Texas law is arguably less protective of consumers like van Mourik, but the comparative benefits of two states' laws does not drive the analysis here. California deems the state with the greater interest to be the state where the wrong occurred (in this case, where the allegedly fraudulent advertisements were seen rather than where they were created). In other choice of law contexts, the fact that one state has more protective laws than another may be relevant to the analysis. For example, the contractual choice of law inquiry focuses on whether the contractually chosen state's law will frustrate another state's fundamental policy, and in that context it may be appropriate to favor application of broader consumer protection laws. *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1170 (N.D. Cal. 2016). But that is not the situation here, where no bargained-for choice of law provision exists between the parties.

Van Mourik devotes much of her opposition to arguing that "California has sufficiently significant contact with Plaintiff's claims that application of California's consumer protection laws

would not be arbitrary or unfair." Dkt. No. 43 at 4. That "significant contacts" inquiry is not part of the choice of law analysis; rather, it is relevant to the threshold question of whether California law may constitutionally bind foreign unnamed class members. *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1073 (N.D. Cal. 2015). Those due process issues are not implicated here for van Mourik's individual claims.

Van Mourik cannot sue individually under the CLRA, FAL, or UCL. Those individual claims are dismissed with prejudice.

### IV. The Individual Implied And Express Warranty Claims

A different result is reached for van Mourik's individual express and implied warranty claims. As an initial matter, and contrary to Big Heart's contention, the complaint plausibly alleges that a reasonable consumer could be misled by the challenged representations. A consumer might reasonably understand "All Natural Dog Food With Added Vitamins, Minerals, & Nutrients" to mean that the food is free of synthetic additives apart from the added vitamins, minerals, and nutrients. But the complaint alleges that the foods contain synthetic and artificial ingredients that are not vitamins, minerals, or nutrients, including sodium tripolyphosphate, citric acid, and lactic acid. Dkt. No. 1 at 2, 5-6. A consumer could also reasonably understand Big Heart's label to mean that the added vitamins, minerals, and nutrients are themselves naturally derived rather than synthetically produced. Dkt. No. 1 at 6-9. These allegations of deception and confusion are well within the bounds of Rule 8. *See also Gregorio v. The Clorox Co.*, No. 17-CV-03824-PJH, 2018 WL 732673, at *4-5 (N.D. Cal. Feb. 6, 2018) (same for "naturally derived" detergent); *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, No. 17-CV-03592-RS, 2018 WL 922247, at *6 (N.D. Cal. Feb. 9, 2018) (same for "natural" poultry).

The complaint also satisfies Rule 9(b). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). That rule "may be relaxed as to matters within the opposing party's knowledge." *Id.* While conclusory allegations with no "particularized supporting detail" do not suffice, the 9(b) "standard does not require absolute particularity or a recital of the evidence . . . . [A] complaint need not

6

allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)) (other citations omitted).

Exhibit 1 to the complaint attaches a spreadsheet containing images and ingredient lists for all the challenged products. For all of the challenged products, van Mourik identifies the representations at issue with sufficient particularity by reproducing the labels and product images along with a full list of ingredients with allegedly non-natural ingredients in bold typeface. Dkt. No. 1 at 9-10; Dkt. No. 1-1. The complaint explains in full detail why these statements are deceptive and misleading and alleges that the statements were all reproduced on Big Heart's website as of July 5, 2017. *Id.* at ECF p.2.

Consequently, the complaint plausibly alleges individual claims for breach of express and implied warranty. Dkt. No. 23 at 10. An express warranty claim "must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (Cal. Ct. App. 1986). Reliance "can be reasonably inferred from the tenor and totality of the allegations in the complaint." *Id.* Here, the complaint identifies the purported warranties in full, *see* Dkt. No. 1-1, and plausibly alleges breach, reliance, and injury. Dkt. No. 1 at 3 (alleging that van Mourik paid a premium price for Big Heart's pet food based on the identified representations). Similarly, van Mourik plausibly alleges an implied warranty claim.

California law is cited here because Big Heart has not shown that Texas law should apply to the warranty claims. Big Heart says that California and Texas differ materially because California requires privity of contract for an implied warranty claim but Texas does not. It is true that California implied warranty claims generally require vertical contractual privity, and consumers who purchase from retailers do not stand in vertical contractual privity with a manufacturer. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). But the vertical privity rule may be relaxed "when the plaintiff relies on written labels or advertisements of a manufacturer," *id.*, or when an express warranty is extended by the manufacturer, *Atkinson v.*

7

*Elk Corp. of Texas*, 142 Cal. App. 4th 212, 229 (Cal. Ct. App. 2006). Because the representations at issue are written advertisements and because van Mourik has stated a plausible claim for breach of express warranty, the vertical privity rule does not bar an implied warranty claim under California law.

## CONCLUSION

All claims on behalf of California or nationwide classes are dismissed with leave to amend. Van Mourik's individual UCL, CLRA, and FAL claims are dismissed with prejudice. Van Mourik's individual common law fraud, intentional misrepresentation, and quasi-contract/unjust enrichment claims are dismissed with leave to amend. Van Mourik may proceed on her individual express and implied warranty claims. An amended complaint is due by **March 23, 2018**.

**IT IS SO ORDERED.**

Dated: March 1, 2018

JAMES DONATO
United States District Judge